**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold CONN, Defendant-Appellant.**

No. 84–1682.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1985.

Decided July 30, 1985.

John F. Podliska, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Herbert A. Bates, Chicago, Ill., for defendant-appellant.

Before COFFEY, FLAUM and WRIGHT,[*] Circuit Judges.

EUGENE A. WRIGHT, Senior Circuit Judge.

Conn appeals from a jury conviction on one count of violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), and nine counts of violating the Hobbs Act, 18 U.S.C. § 1951.

The conviction resulted from the government's "Operation Greylord" designed to uncover corruption in the Circuit Court of Cook County, Illinois. The indictment charged that, while employed as a deputy clerk, Conn solicited and received money to influence public officials in the performance of their official duties.

This appeal presents three questions, each of which we answer in the affirmative:

(1) Whether the court properly admitted tape recorded conversations of third parties;

(2) Whether the government proved the requisite effect on interstate commerce;

(3) Whether the government proved that Conn participated in the conduct of the affairs of the Circuit Court of Cook County through a pattern of racketeering activity.

## I. ADMISSION OF TAPE RECORDED CONVERSATIONS

Conn asserts that the court erred in admitting into evidence taped conversations of out-of-court witnesses. He contends that the evidence was hearsay, the prejudicial effect of which outweighed its probative value. He asserts also that his Sixth Amendment right to confront witnesses was violated.

* Hon. Eugene A. Wright, Senior U.S. Circuit Judge, for the Ninth Circuit.

From September 1980 through January 1982, Conn solicited and received $1,610 from FBI Special Agent David Ries and FBI Project Development Specialist Terrence Hake to influence the disposition of seven state court cases involving traffic offenses, shoplifting, and criminal damage to property. During this time, Ries and Hake, while acting as criminal defense attorneys, engaged in over 40 tape recorded conversations with Conn and others.

The jury heard 27 tape recorded conversations. Defendant's pretrial motion *in limine* was directed only to five of these involving conversations with third parties:

(1) Hake spoke with Judge John Devine on July 7, 1981, regarding *People v. Benson,* a DUI case;

(2) Hake spoke with Judge Devine on August 6, 1981, regarding *People v. Cramer,* a DUI case;

(3) Hake spoke with Judge John Laurie on December 17, 1981, with reference to *People v. McClain,* a shoplifting case;

(4) Hake spoke with Judge Laurie on January 4, 1982, as to *People v. McClain;* and

(5) Hake spoke with Police Officer James Trunzo on December 18, 1981, regarding *People v. McClain.*

Judge Nordberg cautioned the jury on the limited use of this evidence. To assist the jury in understanding the tapes, the court provided each juror with a notebook containing written transcripts. These notebooks included cautionary instructions both before and after each transcribed passage that involved conversations with third parties.

### A. Verbal Acts

For the first two conversations listed above, the court instructed:

> The conversation ... has been offered and received in evidence for the limited purposes of showing that the conversation took place and showing the sequence of events. The statements should not be considered by you for any other purpose.

As the government asserts, the conversations between Hake and Judge Devine were not hearsay because they were not offered for the truth of the matters asserted. *See* Fed.R.Evid. 801(c) (defining hearsay). The court admitted them as "verbal acts and as an establishment of the ... background and continuity and explanation of the subsequent taped conversations."

This evidence is significant only when combined with other evidence of Conn's relationship with Judge Devine. It showed that meetings occurred during which Devine instructed Hake to see Conn. The relationship between the two public officials was explained. The evidence was properly admitted.

### B. Coconspirator Exception

The first of Hake's two conversations with Judge Laurie regarding *People v. McClain* occurred on December 17, 1981. Hake had met with Conn several times and Conn had agreed to see Laurie. Following introductions, Laurie told Hake that "your friend called me." When Hake asked if he could get a not guilty on McClain, Laurie said, "sure". Laurie then advised Hake how to present the case in court.

The second Hake-Laurie conversation occurred on January 4, 1982 just before Laurie heard evidence in a bench trial and found McClain not guilty. Here, Hake and Laurie discussed whether to try the case. Hake discussed his contact with Conn on this matter, which Laurie acknowledged.

The conversation with police officer James Trunzo occurred on December 18, 1981. Hake asked where Conn was working and began to discuss Conn's association with Trunzo. Trunzo confirmed that he had telephoned Laurie on Conn's behalf.

As to these conversations, the court's cautionary instruction read:

> The conversation which you will hear ... is offered as evidence of the intent and state of mind of Defendant Harold Conn. You should not consider that conversation for any other purpose.

The court held a pretrial hearing pursuant to *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir.1978). It ruled that the transcript of Conn's conversation with Hake demonstrated by a preponderance of the evidence that Conn, Judge Laurie and Officer Trunzo were coconspirators. The trial judge ruled also that the statements at issue were made in the course and in furtherance of that conspiracy.

■ At the close of all evidence, the court reconsidered and reaffirmed these rulings. The findings made pursuant to the *Santiago* hearing are not clearly erroneous. *See United States v. Gironda*, 758 F.2d 1201, 1217 (7th Cir.1985) (clearly erroneous standard of review). We find abundant independent evidence in the trial record to establish the coconspirator relationship between Conn and Laurie and between Conn and Trunzo.

■ Hake's conversations with Judge Laurie and Officer Trunzo were properly admitted under Rule 801(d)(2)(E), Fed.R. Evid. The ruling was proper although Conn was not charged with conspiracy.

### C. Confrontation Clause

■ Absent a hearsay violation, Conn's claim that his Confrontation Clause rights were violated must fail. This circuit has adopted a *per se* rule that extrajudicial statements properly admitted under Rule 801(d)(2)(E) do not violate a defendant's constitutional right to confront witnesses. *E.g., id.* at 1218; *United States v. Chiavola*, 744 F.2d 1271, 1276 (7th Cir.1984); *United States v. Xheka*, 704 F.2d 974, 987 n. 7 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983); *United States v. Papia*, 560 F.2d 827, 836 n. 3 (7th Cir.1977). The court did not err in determining that the Confrontation Clause did not bar admission of the tape recorded conversations.

Moreover, there exist substantial indicia of reliability for the statements. Counsel stipulated to the accuracy of the tapes and transcripts. There seems to be no dispute that statements were made and money was exchanged. The only issue at trial was the legal significance of the conversations.

### D. Rule 403

■ The next question is whether the prejudicial effect of the evidence on the defendant required its exclusion. The court's determination of admissibility under Fed.R.Evid. 403 is reviewable only for abuse of discretion. *United States v. Pizarro*, 756 F.2d 579, 584 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 2686, 86 L.Ed.2d 703 (1985).

Evidence of Conn's guilt was overwhelming. Agent Ries testified in connection with the four cases he had in Cook County Circuit Court. He stated that he made six payments to Conn totalling $870 to fix cases. Hake testified that he paid Conn $740 on three occasions to influence the disposition of his cases. Twenty-seven tape recorded conversations of Conn's activities were played to the jury. Finally, there was documentary evidence that Conn falsified court records.

■ The court did not abuse its discretion in determining that the probative value of the challenged tape recordings was not "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. We commend Judge Nordberg's care in fashioning appropriate cautionary instructions and we conclude that the evidence was properly admitted.

## II. INTERSTATE COMMERCE

Conn contends that the government failed to establish federal court jurisdiction because he was not engaged in activities which affected interstate commerce. He asserts that "he did not act knowingly and deliberately with a criminal motive or purpose." He states that the monies received were mere gratuities and were not contingent upon the disposition of cases.

### A. Racketeering

■ Under section 1962(c), it is the affairs of the enterprise, not the person charged with violating the section, that

must affect interstate commerce. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1289 (7th Cir.1983). Moreover, the requirement is met if the enterprise affects interstate commerce through its activities, even if it is the racketeering activities that affect commerce. *Id., see also United States v. Nerone*, 563 F.2d 836, 852–55 (7th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978).

■ The government established that Cook County Circuit Court purchased equipment and office supplies from companies located outside the State of Illinois. The interstate commerce requirement was met.

### B. Extortion

The Hobbs Act makes "whoever in any way or degree obstructs, delays, or affects [interstate] commerce or the movement of any article or commodity in [interstate] commerce" guilty of a crime. 18 U.S.C. § 1951. The statute punishes the attempt along with the completed act. *United States v. Boulahanis*, 677 F.2d 586, 589 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982).

■ The Hobbs Act "is to be given an expansive construction." *United States v. Mattson*, 671 F.2d 1020, 1023 (7th Cir. 1982). A *de minimis* effect is enough provided it is not speculative or attenuated. *Id.* at 1024.

■ In this case, the federal government established two enterprises in commerce. It set up two law offices for undercover FBI agents Hake and Ries who posed as defense attorneys. Government funds paid for supplies, equipment, rental cars and gasoline.

Defendants in the seven cases were also undercover FBI agents who simulated violations of state law. They were arrested by Chicago police officers and their cases were processed through the Circuit Court of Cook County. These "defendants" were represented by Ries or Hake.

Clearly, the FBI purchases in commerce satisfy the interstate commerce require-

ment of the Hobbs Act. *See United States v. Gambino*, 566 F.2d 414, 418–19 (2d Cir. 1977) (activities of FBI-owned waste disposal company "were necessarily wedded to interstate commerce" for purposes of Hobbs Act violation), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978).

Additionally, in *United States v. Schmidt, et al.*, 760 F.2d 828, 833 (7th Cir.1985), this court rejected a claim that a Hobbs Act conviction should be reversed because payments to former Cook County sheriff deputies were mere gratuities. We found sufficient evidence of solicitation to support Schmidt's conviction. *See also United States v. Staszcuk*, 517 F.2d 53, 59 (7th Cir.) (en banc) (no need to prove that extortion was intended to obstruct or affect interstate commerce), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975).

### III. CONN'S PARTICIPATION IN THE CONDUCT OF THE AFFAIRS OF THE CIRCUIT COURT OF COOK COUNTY THROUGH A PATTERN OF RACKETEERING ACTIVITY

Conn argues that the government failed to prove a nexus between his activities and the enterprise, Cook County Circuit Court, sufficient to establish a pattern of racketeering. He contends that the evidence showed only that he was employed by the court and received money on business premises. He asserts that there was no evidence that he used his official position to influence the disposition of cases or that monies received were channeled back into the enterprise. This claim must fail.

Count 1 of the indictment charged violations of 18 U.S.C. § 1962(c), which states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Courts differ on what must be shown to meet the nexus element of § 1962(c). *Compare United States v. Cauble*, 706

F.2d 1322, 1333 n. 24 (5th Cir.1983) (government need prove only that the racketeering acts affected the enterprise in some fashion), *cert. denied,* —— U.S. ——, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984), *with United States v. Webster,* 639 F.2d 174, 185–86 (4th Cir.) (government must prove that the affairs of the enterprise are benefited or advanced by the racketeering activities), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

This court reversed convictions in *United States v. Nerone,* 563 F.2d at 852, because "[t]he prosecuting team apparently assumed, but did not prove, that the affairs of the corporate enterprise charged in the indictment were advanced through racketeering." The court agreed with the appellants' definitions of the word "through" as "by means of, in consequence of, [and] by reason of." *Id.* at 851.

Here, Conn asserts that the government has not proved the requisite nexus beyond a reasonable doubt. In response, the government urges us to lessen their burden of proof. This we may not do. The court charged the jury:

> In Count One of the indictment, to find that the defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the Circuit Court of Cook County, through a pattern of racketeering, you must find that either: (1) the defendant was enabled to commit the acts involving bribery solely by virtue of his position in the enterprise or involvement in the affairs of the enterprise; or (2) the acts involving bribery are related to the activities of the enterprise.

Defense counsel failed to object to the instruction. *See* Fed.R.Crim.P. 30. Absent plain error, failure to object precludes our review of the legal standard charged below. *See United States v. Magnus,* 743 F.2d 517, 525 (7th Cir.1984) (failure to object to jury instruction precludes appellate review).

We are limited to determining whether the government met its burden of proof on this element of RICO. Viewing the evidence in the light most favorable to the government, we conclude that any ra-

tional trier of fact could have found beyond a reasonable doubt that Conn conducted the affairs of the enterprise through racketeering. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (sufficiency of the evidence standard of review); *United States v. Koopmans,* 757 F.2d 901, 905 (7th Cir. 1985) (same).

Conn's duties as a court clerk included making and maintaining accurate court records, calling cases, scheduling hearings and trials, and providing information to lawyers, parties, and the public. There is abundant evidence of his use of the enterprise's personnel, telephones, records, and courtrooms to facilitate his pattern of racketeering activity.

He took money to falsify court records. He accepted a bribe to manipulate the court calendar. He "pretried" cases before judges to determine how defense counsel should proceed in given circumstances. As the district court concluded, the connection between Conn's racketeering activities and the affairs of the Cook County Circuit Court was obvious.

The judgment of conviction is AFFIRMED.