**UNITED STATES of America, Plaintiff,**

v.

**David J. SHIELDS and Pasquale F. DeLeo, Defendants.**

**No. 90 CR 1044.**

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1991.

Thomas M. Durkin, Michael J. Shepard, Asst. U.S. Attys., Chicago, Ill., for U.S.

Dan K. Webb, Steven F. Molo, Winston & Strawn, Chicago, Ill. (G. Robert Blakey,

Notre Dame Law School, Notre Dame, Ind., of counsel), for defendant David J. Shields.

Samuel V.P. Banks, Allan A. Ackerman, Joelle Hillory Hollander, Allan A. Ackerman, P.C., Chicago, Ill., for defendant Pasquale F. DeLeo.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

Pending before the Court are the defendants' objections to the government's tape designations in this case. The Court takes the objections in turn below.

### II. ANALYSIS

#### A. *DeLeo's Motion to Play Tapes in their Entirety*

The government has for the most part limited its tape designations to conversations which fall within the time frame and scope of the alleged conspiracy between defendants Shields and DeLeo. For example, the government has not designated certain preliminary conversations between the government's cooperating witness, Robert Cooley, and Patrick Marcy, secretary of the First Ward Democratic Organization. (*See* Tape No.'s 145–47, 155, 157, 159, 160–62.) In these conversations Marcy and Cooley discussed whether or not Marcy could be of assistance in either reassigning the government's fictional *Nichols v. Wilson* suit or seeing whether Shields could be persuaded to dispose of the case favorably. Ultimately, Marcy concluded that he could be of no help, and Cooley then allegedly turned to DeLeo for assistance.

■ DeLeo has moved to compel the government to play the tapes in their entirety pursuant to Fed.R.Ev. 106. DeLeo argues that playing all of the tapes, including those conversations or portions of conversations which the government has not designated, would explain or place in context those which the government has designated.

DeLeo's motion is granted. The Court has reviewed each of the transcripts and tapes not designated by the government. In those instances in which the government has designated only a portion of a given tape, the excluded portion, although it may not bear directly upon the alleged conspiracy, tends to place the designated portion of the conversation in context and amplify upon the relationships among the defendants and Cooley. As to certain conversations which the government has not designated even in part, *e.g.*, the series of conversations between Marcy and Cooley, the Court finds that playing the recordings of these conversations will help to establish the background, development, and course of the alleged conspiracy. For these reasons, and in the interest of affording the defendants and the jury a complete picture of the defendants' actions, the Court will order the tapes played in full in the government's case-in-chief. *Cf. United States v. Conn*, 769 F.2d 420, 422 (7th Cir.1985) (upholding district court's decision to admit certain conversations as verbal acts reflecting course of conspiracy).[1]

This ruling is subject to certain exceptions. As set forth below, the Court has found portions of certain conversations completely irrelevant to any issue in the case or otherwise inadmissible. In such situations, the transcripts (and to the extent possible, the tape recordings) will be modified to omit the passages. The Court's ruling also does not include Tape No. 205, which bears evidence of an alleged conversation between Cooley and DeLeo on June 15, 1989. As set forth in a minute order dated August 12, 1991, the Court has reserved final ruling upon the admissibility of this conversation for trial. (*See also* page 1106, *infra.*)

---

**1.** Because the tapes proceed in chronological order, and the Court has ordered all of them played in order to show the course of the alleged conspiracy, it would make no sense to simply let the defendants play the undesignated recordings in their own case. For the sake of completeness and clarity, they must all be played in the government's case-in-chief.

### B. *Shield's Objections to the Propriety of Certain Designations*

#### 1. Government Designation No. 1, Tape No. 164 (8/15/88)

Shields objects to the introduction of this tape recording on the ground that the conversation between DeLeo and Cooley on August 15, 1988 took place prior to the beginning of the conspiracy. The Court rejects this argument. Aside from the fact that the government asserts that the alleged conspiracy began *on or about* August 15, 1988, (see Indictment ¶ 2) (emphasis added)[2], the recording of this conversation is admissable pursuant to Fed.R.Evid. 106 for the purpose of establishing context. In this conversation, Cooley and DeLeo arrange to meet on the following day, August 16, 1998, to discuss the *Nichols v. Wilson* lawsuit. The meeting which took place on August 16, 1988, is clearly within the scope of the alleged conspiracy. Accordingly, the conversation on the prior day is admissable in order to establish the setting for the August 16 meeting. *See Conn,* 769 F.2d at 422. Moreover, there is nothing at all prejudicial in this conversation. Accordingly, Shields' objections to tape no. 164 are overruled.

#### 2. Government Designation # 2, Tape No. 163 (8/16/88)

Shields initially objects to this tape on the ground that the government has not proffered sufficient evidence of a conspiracy to render DeLeo's statements admissable pursuant to Fed.R.Evid. 801(d)(2)(E). Shields has repeated this objection throughout his memorandum. However, the objection has been rendered moot by the Court's ruling that the co-conspirator statements are admissable based upon the evidentiary proffer that the government has made pursuant to *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978). *See* Minute Order dated August 1, 1991.[3] Because this conversation plainly falls within the time frame and the scope of the alleged conspiracy, it is admissible pursuant to Rule 801(d)(2)(E).

■ Shields also objects to certain statements which Cooley made during this conversation regarding the nature and status of the *Nichols* case. Shields objects to these statements on the grounds that they are offered for their truth, and therefore are inadmissable hearsay. Shields further contends that these statements are unduly prejudicial and should be excluded under Fed.R.Evid. 403.

The Court finds these statements admissable to establish the context of DeLeo's statements and his state of mind. *See United States v. Davis,* 890 F.2d 1373, 1380 (7th Cir.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990); *United States v. Craig,* 1987 WL 20415 at *5 (N.D.Ill. Oct. 26, 1987) (Rovner, J.). Shields' contention that the remarks are offered to proof the truth of the matters asserted is inaccurate. Because these comments concern the fictional *Nichols* suit, they cannot be and quite plainly are not offered for their "truth"—*e.g.,* that the partner of Cooley's client had actually taken money from the partnership account (*see* Tr. at 3). Moreover, the Court discerns nothing unduly prejudicial in any of the statements Shields has cited. In these passages, Cooley merely discusses the *Nichols* case, and makes no assertion regarding Shields or DeLeo which could be interpreted as prejudicial.

Finally, Shields has requested that if the tape is played, it be played in its entirety. As set forth above, the Court has granted DeLeo's motion to play all of the tapes in their entirety for purposes of completeness under Fed.R.Evid. 106. Accordingly, this tape will be played in full.

#### 3. Government Designation No. 3, Tape No. 166 (8/17/88)

Shields objects to this tape on the alternate ground that DeLeo's statements dur-

---

**2.** *See United States v. Jackson,* 935 F.2d 832, 844 (7th Cir.1991) (time period of conspiracy is determined by the evidence presented at trial rather than the dates alleged in the indictment).

**3.** Because this is an across-the-board objection, the Court need not respond to it in each instance where Shields has reasserted the objection. The Court's finding that the argument has been rendered moot by the its *Santiago* finding applies uniformly.

ing this conversation are mere narrative declarations regarding his schedule and therefore have nothing to do with furthering the conspiracy. However in the interest of completeness, the Court finds these statements admissable in order to establish the context of this and subsequent conversations between Cooley and DeLeo. Shields has identified nothing prejudicial in any of these statements. Accordingly, Shields objections to tape no. 166 are overruled. This conversation merely concerns a meeting arranged for a later date. Therefore, it is helpful in establishing the context of the subsequent meeting. *See Conn*, 769 F.2d at 422.

### 4. Government Designation No. 4, Tape No. 168 (8/17/88)

■ Shields objects to statements of an "unknown female" on page three of the transcript as inadmissable hearsay. Shields contends that these designations have no relevance unless offered for the truth of the identification. In essence, Shields contends, the government is offering these statements to show that DeLeo called Shields' chambers, thus proving the truth of the unknown female's indication that DeLeo had reached Shields' chambers.

This objection is overruled, as these statements by the unknown female occur immediately prior to a conversation between Shields and DeLeo. Accordingly, these statements merely set the stage for that conversation, establishing what was said to DeLeo and thus supplying the context for his subsequent statements. *See generally United States v. Davis*, 673 F.Supp. 252, 259 (N.D.Ill.1987) (Williams, J.). Moreover, the government's representation that it will supply phone records indicating that DeLeo in fact placed a call to Shields' chambers, coupled with the statement of the unidentified female who answered the call, suffices to allay any concerns about whether or not DeLeo was actually speaking with Shields' chambers. *Cf. First State Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 41 (5th Cir. 1990) (testimony that number of residence had been dialed, coupled with statement of person answering the call which identified

the residence, sufficed to authenticate phone call).

■ Shields next objects to DeLeo's statements during the alleged conversation with Shields as mere narrative declarations. This objection is also overruled. Because DeLeo's statements concern arranging a meeting between Shields and himself, they are plainly in furtherance of the alleged conspiracy.

Shields also objects to the admission of these statements on the ground that they lack the required foundation under Fed. R.Evid. 901. However, as set forth above, based upon the representations of the government (see Gov. Mem. at 16–17), it appears likely that the government will be able to establish the requisite foundation for the telephone call at trial. Accordingly, this objection is overruled.

Shields objects to two of Cooley's statements, page three ("The other guy ... finding it again"), and the other on page five ("He's taking one day off I guess."). Shields objects to the statement on page three on the ground that it contains affirmative assertions and is offered for its truth. However, because such statements concern the *Nichols v. Wilson* case, they are not in fact offered for the truth as explained above—the *Nichols* case was a complete fiction. Moreover, the Court agrees that such statements are necessary in order to place the defendants' subsequent alleged statements and actions in context. Similarly, Cooley's statement on page five, although characterized by Shields as mere narrative, is necessary to place DeLeo's subsequent remark in context. Accordingly, Shields' objections to the statements are overruled.

### 5. Government Designation No. 5, Tape No. 166 (8/18/88)

Shields' sole objection to this tape is that the government has not proffered adequate evidence of the alleged conspiracy in order to render the conversation admissible pursuant to Rule 801(d)(2)(E). This objection is overruled in light of the Court's finding to the contrary.

6. Government Designation No. 6, Tape No. 165 (8/19/88)

Shields objects to the admission of this tape recording pursuant to Rule 901(a), contending that the tape cannot be authenticated in light of its jumbled, confusing and unintelligible nature. Shields also contends that exclusion is called for by Rule 403, because it is so garbled that its probative value is outweighed by the danger of unfair prejudice, confusion, and misleading of the jury. However, the Court has listened to the tape recording and concluded that it is not so garbled or unintelligible that its trustworthiness and authenticity is called into question. Accordingly, this objection is overruled.

Shields also objects to certain statements by Cooley on the ground that they contain assertions offered for their truth. This objection is overruled. In these statements, Cooley either explains what he has done or purportedly would do in prosecuting the *Nichols* case, or in the alternative explains the purported status of the *Nichols* suit. These statements are necessary in order to place the subsequent actions and statements of the defendants in context. *See Davis*, 673 F.Supp. at 259, 890 F.2d at 1380; *Craig*, 1987 WL 20415 at *5. As noted previously, because such statements concern a fictional case, they are not offered for their truth in contravention of the hearsay rule in any event.

▮ Finally, Shields contends that in the event the conversation between Cooley and DeLeo is admitted, the tape recording of the subsequent proceeding in Shields' courtroom should be admitted in the interest of completeness. The Court agrees, and consistent with its ruling that all tapes should be played for the sake of completeness, the court proceeding will be played for the jury as well. Because Shields' actions in the courtroom are implicated by the indictment, the defendants are entitled to have the jury hear what transpired in courtroom proceedings in order to have a full understanding of the course of events and of Shields' conduct in particular.

7. Government Designation No. 7, Tape No. 171 (8/23/88)

Shields also objects to the admission of certain statements made by DeLeo during this conversation on the ground that they are mere narrative declarations regarding DeLeo's schedule and therefore accomplish nothing in furtherance of the conspiracy. Again, the Court finds such statements admissible in order to establish the context of subsequent meetings between Cooley and DeLeo. *See Conn*, 769 F.2d at 422. Moreover, there is nothing prejudicial in any of these statements to either DeLeo or Shields.

8. Government Designation No. 8, Tape No. 171 (8/24/88)

Shields objects to the admission of any portion of this tape against him, on the grounds that the statements of the unidentified female in this conversation are inadmissible hearsay offered for the truth of the matters asserted. However, this conversation helps to explain DeLeo's responses, *see Craig*, 1987 WL 20415 at *5, and to establish the context of the subsequent meeting between Cooley and DeLeo, *see Conn*, 769 F.2d at 422. Moreover, as with the preceding conversation, nothing in these statements supply any prejudicial information regarding either Shields or DeLeo. Accordingly, the Court finds this conversation admissable.

9. Government Designation No. 9, Tape No. 170 (8/24/88)

▮ Shields objects to a number of statements by DeLeo in this conversation in which DeLeo expresses doubt that the case could be put over for two weeks (page 2), indicates that Shields would not give Cooley a two-week date without his client being present in court (page 5), it would "be so much better" if Cooley's client were present (page 6), and comments on the mindset of a third person, presumably Shields (page 7). Shields objects to each of these statements the ground that they are mere speculation inadmissible under Rule 602 and are unduly prejudicial. Shields objects to the last statement on the addi-

tional ground that it is not in furtherance of the conspiracy and is thus inadmissable under Rule 801(d)(2)(E).

These objections are overruled. The Court finds each of these statements to be a co-conspirator statement within the scope of rule 801(d)(2)(E). The statements directly implicate matters which are central to the government's case, namely the alleged solicitation of interstate travel by Agent Nixon and the alleged payment of bribes to Shields. Accordingly, they are admissible without restriction. *Cf. United States v. Yarbrough*, 852 F.2d 1522, 1536 (9th Cir.) (statements discussing future actions of conspiracy admissible under Rule 801(d)(2)(E)), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988); *United States v. Heinemann*, 801 F.2d 86, 96 (2d Cir.1986) (discussion of strategy for overcoming problems posed to conspiracy admissible under Rule 802(d)(2)(E)), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987); *United States v. Crocker*, 788 F.2d 802, 805 (1st Cir.1986) (statements regarding co-conspirators' availability and willingness to continue with illegal activity admissible as statements in furtherance of conspiracy).

■ Shields next objects to the inclusion of DeLeo's inquiry on page one regarding why Cooley believed he might lose the forthcoming hearing before Shields. Shields contends that the statement is non-assertive or in the alternative is inadmissable narrative which is irrelevant. The Court disagrees. At minimum, the question is admissible for purposes of placing in context the subsequent dialogue between Cooley and DeLeo. The question is an integral part of the conversation between Shields and DeLeo, and marks the introduction of DeLeo's apparent suggestion that Cooley bring his client to the forthcoming hearing before Shields. This suggestion is central to the government's Travel Act charge against Shields and DeLeo, and is highly relevant to an assessment of DeLeo's intent.

Next, Shields objects to DeLeo's statement on page four of the transcript beginning with "he says look, tell me what['']s

comin['] up later ..." Shields contends that this statement is mere narrative. However, this statement purports to reflect a conversation between DeLeo and Shields, the topic of which related to the alleged conspiracy. Accordingly, the Court finds DeLeo's statement both in furtherance of the conspiracy and necessary in order to explain DeLeo's other comments and actions. *Cf. United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir.1987) (declarant's statement recounting concerns expressed in meeting outside of witness' presence properly deemed a statement in furtherance of conspiracy, as it was intended to keep witness abreast of co-conspirator's activities).

Finally, Shields objects to several statements by Cooley on the ground that they are offered for their truth and thus constitute inadmissable hearsay. These statements concern the status of the fictional *Nichols* case as well as the fact that Cooley's client was currently out of town. Again, because these statements concern a fictional case it is difficult to construe these as statements offered for their truth. The Court agrees that they are properly admitted for the purpose of establishing context and explaining DeLeo's subsequent comments and actions. *See Conn*, 769 F.2d at 422; *Craig*, 1987 WL 20415 at *5. Moreover, contrary to Shields' further assertion, these statements are not unduly prejudicial such that they should be excluded under Rule 403.

10. Government Designation No. 10, Tape No. 172 (8/26/88)

Shields objects to certain statements by Cooley on pages one and two of the transcript regarding the status of the *Nichols* case and the purported inability of his opposing counsel to attend a hearing scheduled for the following Monday. Shields once again takes issue with such statements on the ground that they are offered for their truth and thus constitute nonadmissable hearsay. The Court overrules this objection. These statements concern a fictional case, and are plainly relevant in order to establish context for the remain-

der of the conversation. Moreover, there is nothing prejudicial in these statements calling for their exclusion under Rule 403.

### 11. Government Designation No. 11, Tape No. 177 (8/29/88)

Shields objects to the inclusion of DeLeo's statement at page six of the transcript that he would be seeing " 'em" at 12:00 on the following day. Shields contends that this is a mere narrative declaration which does not further the goals of the alleged conspiracy and is irrelevant apart from its truth. This objection is overruled; the statement is essentially a report on the status of the alleged conspiracy and thus was in essence a statement in furtherance of it. *See Garlington v. O'Leary,* 879 F.2d 277, 284 & n. 8 (7th Cir.1989) (statements intended to inform and reassure are in furtherance of conspiracy); *United States v. Traitz,* 871 F.2d 368, 399, 400 (3d Cir.) (discussions reflecting intent to reassure co-conspirator and supply information regarding status of the conspiracy fell within scope of Rule 801(d)(2)(E)), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989); *United States v. Rastelli,* 870 F.2d 822, 837 (2d Cir.) (statements apprising listener of progress of conspiracy were in furtherance), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *Yarbrough,* 852 F.2d at 1536 (reports on future actions were in furtherance of conspiracy)

### 12. Government Designation No. 12, Tape No. 172 (8/30/88)

Shields objects to the inclusion of DeLeo's statements regarding an anticipated meeting with Shields. Shields contends that these are mere narrative declarations regarding DeLeo's schedule and do nothing to promote the conspiracy's objectives. The objection is overruled. Because the statements concern an anticipated meeting with Shields, they establish context for subsequent conversations and may be deemed in furtherance of the conspiracy in the sense that DeLeo describes actions he was allegedly taking in furtherance of the alleged conspiracy. *See id.; Traitz,* 871 F.2d at 399, 400.

### 13. Government Designation No. 13, Tape No. 174 (8/30/88)

Shields objects to DeLeo's statements on page one of the transcript beginning with "yeah he said do you mind ..." and the statement on page four of the transcript "oh yeah." Shields objects to these statements on the ground that they are mere narrative declarations which are inadmissable under Rule 801(d)(2)(E). This objection is baseless. Both statements relate to the conspiracy insofar as they describe the purported intent and reaction of Shields to events in the case. *See Crocker,* 788 F.2d at 805.

Shields objects to certain statements made by Cooley and DeLeo at pages one, two and three of the transcript as being statements not in furtherance of the conspiracy and thus not admissable as co-conspirator statements. However, at minimum, the statements are admissable for purposes of context, rendering other statements made by DeLeo intelligible.

Finally, Shields objects to Cooley's statement on page one that "if he dealt with that within the next week or so he's got a real problem" and Cooley's statement on pages two and three beginning with "uh its wide-open." and ending with "package deal." Shields contends that these statements are offered for their truth and thus constitute inadmissable hearsay. Shields also contends that to the extent that the statements are admissable they are unduly prejudicial and should be excluded under Rule 403.

These objections are overruled. The remarks concern a mock suit and are clearly necessary in order to place DeLeo's statements in context. *See Davis,* 673 F.Supp. at 259. Moreover, the Court finds little which is prejudicial in these remarks. To the extent that there is any such prejudice posed by the remarks, it is outweighed substantially by the probative value.

### 14. Government Designation No. 14, Tape No. 175 (8/31/88)

Shields objects to this tape on a variety of grounds: (1) Shields contends the con-

versation is irrelevant and should be excluded under Rule 402; (2) Shields contends the recording is inaudible, likely to cause confusion, and unduly prejudicial such that it should be excluded under Rule 403; and (3) Shields contends there is no foundation and thus the conversation does not meet the requirements of Rule 901.

■ None of these objections has merit. No foundation is necessary for the telephone call reflected at the outset of the transcript as its presence merely serves to establish the context of the subsequent conversation between Shields and DeLeo. Nothing is at issue as to the content of the call, the identity of the person Shields was purportedly talking with, etc. The Court has listened to the entire tape recording on a number of occasions, and does not find any merit to the contention that it is inaudible or confusing. The conversation is highly relevant, in that it includes statements which, according to the indictment, evidence Shields' participation in the conspiracy. (*See* Tr. at 1.) To the extent this portion of the conversation is prejudicial it is not unduly so, nor is its prejudicial impact substantially greater than its probative value such that it must be excluded under Rule 403. Finally, to the extent that portions of the conversation appear to concern matters which are irrelevant to the allegations of the indictment, the Court deems it prudent nonetheless to have the entire conversation played consistent with its ruling that the tapes should be played in their entirety for purposes of giving the jury the benefit of the context of each conversation and the alleged actions of the defendants. Certainly, nothing in any of the apparently extraneous matters discussed between Shields and DeLeo poses any risk of prejudice to either defendant.

15. Government Designation No. 15, Tape No. 173 (9/01/88)

Shields objects to all of the statements on page one of the transcript on the grounds that they are irrelevant and therefore inadmissable pursuant to Rule 402. However, the Court finds these statements admissable in that they represent the intro-

ductory portion of a conversation between Cooley and DeLeo, thus establishing the context of the conversation.

Shields next objects to Cooley's statement on page two in which he describes the status of the *Nichols* case. As with other statements of Cooley's regarding the *Nichols* litigation, the Court finds this remark admissable in order to establish the context of DeLeo's subsequent statements and alleged actions.

■ Shields also objects to DeLeo's statements on page three beginning with "I absolutely think its no problem, because he was like doing somersaults" and continuing through his statement on page four "do a deposition or somethin['] ..." Shields contends that these are mere narrative statements which have nothing to do with the conspiracy, or in the alternative are unduly prejudicial to him and therefore inadmissable pursuant to Rule 403. However, the Court finds these statements admissable in so far as they purport to relate Shields' reaction to the bribes DeLeo had allegedly transmitted to him and to future handling of the *Nichols* case. *See Crocker*, 788 F.2d at 805; *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C.Cir.) (communications regarding status of conspiracy admissible, particularly where they could be construed as encouraging listener to participate in and advance ends of conspiracy), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). To the extent such statements may be prejudicial, they are not unduly so because they relate to allegations which are central to the government's case against Shields. Thus, it is the Court's view that the probative value of these statements outweigh the prejudice. Accordingly, the statements are properly admitted into evidence against both defendants.

Finally, Shields objects to Cooley's statements at the conclusion of the conversation beginning with "well, I'm hoping to work it out anyhow ..." through the end of the tape. Shields contends that these remarks are mere narratives which are irrelevant. However, the Court finds these statements admissable as a report on the status of

developments in the alleged conspiracy. *See id.; Rastelli,* 870 F.2d at 837.

### 16. Government Designation No. 16, Tape No. 178 (9/02/88)

Shields initially objects to the inclusion of DeLeo's statements at the beginning of the second transcript: "I called 'em (IA) phone booth" through "he didn't know". Shields contends these statements are merely narrative. However, the Court finds them admissible as co-conspirator statements concerning the status of the alleged conspiracy under Rule 801(d)(2)(E).

■ Shields also objects to Cooley's observation on page two of the transcript that "I just talked to Patty and he headed down the hall towards the courtroom of Judge David Shields." The Court agrees that this is a self-serving narrative but this observation will be deleted from the transcript. If the government wishes to present evidence of Cooley's observation to the jury it must do so by having Cooley himself testify.

Similarly, Shields objects to Cooley's statement at page five of the transcript, where he states "its ten to eleven ..." Shields contends that this statement is also a mere narrative, and the Court agrees. The government will delete this passage from the transcript.

■ Next, Shields objects to a long passage beginning on page two and continuing through page five of the transcript, in which Cooley and DeLeo discuss another lawyer. Shields contends that discussion is irrelevant and is not in furtherance of the conspiracy. Although the Court agrees that this discussion does not concern the subject of the alleged conspiracy *per se,* the Court finds the government's contention that it bears upon the relationship between Cooley and DeLeo to be accurate. *See United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988) (conspiracy may be proven by circumstantial evidence, including the relationship of the parties), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). However, because the discussion is of a sensitive nature and identifies another lawyer, the Court deems it prudent to have the lawyers name deleted and replaced with a denomination like "Lawyer A". The Court directs the government to make the appropriate changes on the transcript. Finally, Shields objects to the government's exclusion of the courtroom proceeding which took place before Shields on September 2, 1988. Shields contends that inclusion of the proceeding would serve the doctrine of completeness reflected in Rule 106. The Court agrees, and will admit the transcript and tape recording of the courtroom proceeding consistent with its ruling that the tapes should be played in their entirety.

### 17. Government Designation No. 17, Tape No. 176 (9/02/88)

■ Shields objects to this tape on the ground that everything following DeLeo's statement that "I am goin' out of town next week" is garbled, masked by static, and unintelligible. Shields suggests that the fact the Court allowed the defense to present an alternate transcript of this recording reflects the Court's view that the tape is sufficiently unintelligible that it could not be heard. This is an inaccurate construction of the Court's ruling. Although the Court did note that some portions of the tape were easier to discern than others, it certainly did not make any finding that the tape was utterly inaudible as Shields now argues. As the Court stressed several times during its July 24 ruling, it has allowed the defense to present alternate transcripts in cases where there are disputes in order to give the defendants every benefit of the doubt. The Court has listened to this tape recording several times and does not find the tape to be inaudible, misleading, or confusing. To the extent that reasonable persons might differ as to what they can discern from the tape recording, the Court's previous ruling allowing alternate transcripts suffices to protect the defendants' interests. Accordingly, Shields' objections to this tape are overruled.

### 18. Government Designation No. 18, Tape No. 183-1 (9/21/88)

Shields objects to this entire recording as being irrelevant and inadmissible under

Rule 402. Shields argues that the conversation between DeLeo and Cooley constitutes mere casual commentary regarding Cooley's car and a possible meeting. Accordingly, in Shield's view, the conversation does not in anyway advance the ends of the alleged conspiracy. However, the Court finds the conversation admissible for the purposes of establishing the nature of the relationship between Cooley and DeLeo, and for the additional purpose of establishing context for subsequent conversations between DeLeo and Cooley. *See Conn*, 769 F.2d at 422.

### 19. Government Designation No. 19, Tape No. 181 (9/21/88)

Shields initially objects to a series of remarks which Cooley makes at the outset of the conversation regarding parking difficulties. Shields contends that the comments constitute mere narrative which amounts to inadmissable hearsay. However, the Court will admit this portion of the conversation to place the remainder in context.

Next, Shields objects to a series of remarks which DeLeo makes at page two of the transcript. These include a question— "Are you going to dismiss it now?"—and a series of short responses to questions from Cooley. Because the question and the interchange which follows concern the disposition of the *Nichols* case the Court finds them relevant to the allegations of the indictment and admissable as statements in furtherance of the conspiracy. Alternatively the statements of DeLeo are admissable to establish the context and meaning of the remainder of the conversation. Accordingly, Shields' objections in this respect are overruled.

 Shields further objects to questions posed by DeLeo at page three of the transcript: (1) "you got your cut?" and (2) "so how much do you wanna go?" Shields contends these are nonassertive statements which are inadmissable under Rule 801(d)(2)(E). However, the context of the conversation suggests these inquiries are directed at Cooley's payment for handling of the case, as well as the amount which

might be passed onto DeLeo for his assistance in disposition of the case. Accordingly, the statements are directly relevant to the allegations of the indictment and are admissable as statements in furtherance of the alleged conspiracy. Finally, Shields objects to all of the statements on page four as being irrelevant and not in furtherance of the conspiracy. At page four of the transcript DeLeo and Cooley discuss plans to speak on the following day and then engage in conversation about other matters. The portion of the transcript regarding a meeting or conversation on the following day qualifies as conversation in furtherance of the conspiracy, and also establishes the context of subsequent conversations. *See Conn*, 769 F.2d at 422. The remainder of the tape concerns irrelevant matters and will be deleted from the transcript and recording. In addition, the government has agreed to delete the first three lines of the transcript, which are irrelevant.

### 20. Government Designation No. 20, Tape No. 183-5 (9/22/88)

Shields has filed no objections to this designation.

### 21. Government Designation No. 21, Tape No. 182 (9/22/88)

 The government has only designated a portion of this tape. Shields objects to the limited designation, and seeks to have the tape played in its entirety. As set forth above, the Court has granted DeLeo's motion to have all tapes played in their entirety. This renders Shields' objection moot.

Shields also objects to the narrative remarks of Cooley at the outset and conclusion of the conversation as being irrelevant. The government has agreed to delete these passages, rendering the objection moot.

Finally, Shields objects to the inclusion of the following remark by Cooley near the outset of the conversation:

Here there's uh, there's sixty why don't you check it. Its all brand new bills, maybe there's about sixty-one, sixty-two.

Shields contends that such a remark could only be offered for its truth, thus rendering it inadmissable hearsay. The government contends that Cooley's remarks correspond to his counting money, which it argues can be heard on the tape. In the government's view, the remarks are not hearsay, because they are relevant to DeLeo's knowledge, and because DeLeo does not contest Cooley's count, are relevant to prove the amount of money allegedly supplied to DeLeo. The government concedes that a limiting instruction would be appropriate, to inform the jury that it may not accept Cooley's statement on the tape as to the amount of money for its truth. However, the government does note that Cooley himself could testify as to the amount of money he allegedly gave DeLeo.

The Court finds the remarks relevant to establish the context of the conversation, particularly given the fact that the sounds of counting can be heard on the tape. The Court will entertain a limiting instruction from the defense restricting the jury's consideration of Cooley's remarks to this limited purpose. However, if the government or the defense decides to call Cooley testify, he may of course offer testimony as to the amount of money he allegedly passed on to DeLeo.

22. Government Designation No. 22, Tape No. 183–8 (9/23/88)

Shields appears to object to this conversation on the ground that Cooley makes references to an amount of money. However the Court has been unable, as has the government, to locate any reference to money during this conversation. Accordingly, Shields' objection appears to be misplaced.

23. Government Designation No. 23, Tape No. 183–9 (9/26/88)

Shields objects to the statements made during this conversation as being irrelevant and not in furtherance of the conspiracy. In particular, Shields contends that these statements postdate the conspiracy and therefore cannot be admitted pursuant to Rule 801(d)(2)(E). However, because this conversation appears to be one in a series in which Cooley and DeLeo discuss whether or not DeLeo has been able to visit Shields and allegedly make final payment to him, the Court finds the statements of DeLeo to be relevant to and in furtherance of the conspiracy. Cooley's statements, of course, come in to establish the context of DeLeo's remarks.

24. Government Designation No. 24, Tape No. 183–12 (9/26/88)

Shields once again objects to DeLeo's statements in this conversation on the grounds that they were not made in the course of and in furtherance of the conspiracy. This objection is overruled on the same grounds as the previous objection concerning tape designation number 23.

Shields also objects to the fact that the government has limited its designation to the first portion of the conversation ending with Cooley's remark "oh okay." Shields contends that the remainder of the conversation should be played in order to place DeLeo's statements at the outset in context. Shields further contends that the conversation reflects Cooley attempting to convey a sense of urgency and perhaps prompting DeLeo to contact Shields. Consistent with its ruling in other instances, the Court will direct the entire conversation to be played in the interests of completeness.

25. Government Designation No. 25, Tape No. 187 (11/07/88)

Shields' primary objection is that the government has only designated a limited portion of this conversation. Shields contends that the entire conversation should be played in the interests of completeness pursuant to Rule 106. Shields also objects, however, to the introduction of DeLeo's statements during the conversation because he argues that they were not made in the course of the conspiracy and thus are inadmissible under Rule 801(d)(2)(E). The Court agrees that this conversation significantly postdates the conspiracy and sheds little light on the participation of either

DeLeo or Shields in the alleged conspiracy. Accordingly, this tape will not be played.

26. Government Designation No. 26, Tape No. 205 (6/15/89)

This tape recording and transcript will be the subject of a separate ruling by the Court. To the extent that Shields argues designation of this tape should be more expansive than the government has made, the Court will address those arguments at the appropriate time, should the tape be admitted.

Shields has raised accuracy disputes concerning the transcript of this tape recording which may be disposed of at this time. It is too late for such objections. In its opinion regarding the production of draft transcripts, *United States v. Shields*, 767 F.Supp. 163, 166 (N.D.Ill. 1991), the Court set June 21, 1991 as the deadline for any objections to transcript accuracy. No objections were submitted regarding this particular tape. Nonetheless, in the event the Court permits the government to play this tape, the Court will submit dual transcripts to the jury for its consideration. Accordingly, defendants are to prepare an alternate version of the transcript reflecting their construction of the conversation for use in the event the Court rules the conversation admissible into evidence.

### C. *Limiting Instructions*

At the status hearing on August 12, 1991, the Court instructed the parties to submit for its review any proposed cautionary instructions by the close of business on August 13, 1991. In drafting such instructions, the parties should consider the purposes for which the Court has deemed each of the government's designations admissible. In the event the Court has deemed a particular conversation admissible for a limited, nonhearsay purpose, the parties should prepare an appropriate instruction which may accompany evidence concerning that conversation. *At trial, however, it*

---

**4.** In the event the parties agree that a particular conversation or portion thereof not specifically addressed in this ruling is irrelevant, they may

*shall be incumbent upon the parties to request that a particular limiting instruction be given at a particular time.*

### III. CONCLUSION

For the reasons set forth above, DeLeo's motion to compel the government to play the tapes in their entirety in its case-in-chief is granted within the limitations of this opinion.[4] Shields' objections to particular tape designations are overruled in part and sustained in part. The parties are to submit forthwith limiting instructions conforming to the terms of this opinion.

---

agree to forego playing the recording of that conversation.